OSCAR GLANCKOPF et al., Plaintiffs, *v.* GUARANTY TRUST COMPANY OF NEW YORK, Defendant.

First Department, June 21, 1948.

*Samuel Silbiger* of counsel (*Herrick, Feinstein & Rossman,* attorneys), for plaintiffs.

*John F. LeViness, Jr.,* of counsel (*C. Robert Roll* with him on the brief; *Gwinn & Pell,* attorneys), for defendant.

SHIENTAG, J. The question presented by this agreed statement of facts is whether certain consents given by parties to an *inter vivos* trust are sufficient to satisfy the requirements of section 23 of the Personal Property Law as a basis for legal revocation of the trust.

In 1923, plaintiff Oscar Glanckopf, as settlor, transferred ten bonds to defendant, as trustee, to pay the net income to his daughter (then Mrs. Charles Buchwald and now Mrs. Regina Appleton) for life. The further terms concerning the disposition of income and corpus were as follows:

"II. Upon the death of the first party's daughter, Mrs. Charles Buchwald, if the first party hereto shall then be deceased, the trustee shall then transfer, convey and pay over the principal of said trust to the persons at the times and in the manner as the said Mrs. Charles Buchwald may have provided by her last will and testament, and in the event she shall have failed so to provide, *then to the persons and in the same amounts and manner as the said trust property would have been distributed and paid over had the said Mrs. Charles Buchwald owned the same at the time of her death.*

" If the first party hereto survive his said daughter, this trust shall terminate at the said daughter's death, and the trustees of this trust shall then re-convey and re-transfer the principal of this trust back to the said first party." (Italics ours.) No privilege of changing the terms of the trust was reserved.

Mrs. Appleton has a daughter, Margaret Rose Buchwald, and no other issue. The settlor, the life beneficiary and the presumptive next of kin of the life beneficiary (all, it has been stipulated, being of full age) have joined in a duly executed consent to permit the settlor to revoke this trust. The trustee denies that " all the persons beneficially interested " (as required by

section 23 of the Personal Property Law) have consented. The trustee claims that the contingent distributees of Mrs. Appleton, as of the date of her death, who are now unascertainable and yet may be in being, are not represented by Mrs. Appleton or Miss Buchwald and that they cannot consent to the cutting off of those interests. The trustee, therefore, contends that the requirements of section 23 of the Personal Property Law have not been satisfied.

In the last analysis the question presented is one of intention. " Once ascertained this intention ' will be carried out in so far as it is not inimical to law.' " (*Matter of Healy*, 255 App. Div. 361, 365.) Presumptions may be indulged in and prima facie precepts of construction may be resorted to but they yield to the clear intent of the settlor of the trust as evidenced by its provisions taken as a whole. The result reached for example in *Engel* v. *Guaranty Trust Co.* (280 N. Y. 43) was on the basis of interpretation of intention rather than of an inflexible rule of property (see *Matter of Scholtz* v. *Central Hanover Bank & Trust Co.*, 295 N. Y. 488).

When the trust instrument is examined, it is difficult to see how it could have been intended to make all possible future next of kin of the life *cestui*, no matter how far removed in degree, and under highly speculative and remote contingencies, so " beneficially interested " in the trust as would prevent revocation on the consent and relinquishment of all those now having an interest therein. From a realistic standpoint, future unborn descendants may be said to have more of a beneficial interest in the trust than any remote, contingent next of kin not now ascertainable but who might be in being. Yet persons unborn have no such beneficial interest in the trust as to prevent its revocation (*Smith* v. *Title Guarantee & Trust Co.*, 287 N. Y. 500, 503).

It should be noted that in referring to the possible ultimate recipients of the corpus, the words " heirs or next-of-kin " are not employed. Instead, the deed of trust, in paragraph II thereof, provides that in certain specified contingencies the principal was to be paid over " to the persons and in the same amounts and manner as the said trust property would have been distributed and paid over had the said Mrs. Charles Buchwald [now Mrs. Appleton the life beneficiary] owned the same at the time of her death."

Moreover the *cestui* for life was given a general power of appointment by will and in that manner might, without restriction or limitation, prevent any possible next of kin from sharing

in the principal (cf. Personal Property Law, § 18). Possessing as she does this general power of appointment by will, the act of the *cestui* for life in consenting to the revocation of the trust may be regarded as tantamount to the cutting off of any possible contingent rights of her future next of kin not now ascertainable.

It seems clear, therefore, that what the settlor of the trust intended, and that intent may be found within the framework of the trust indenture, was that the natural object of his bounty, his daughter, should receive the income for life; if she predeceased him, the principal was to revert back to the settlor; if he predeceased her, she was to continue to receive the income for her life and on her death the principal could be disposed of in the same way as if it were her property; she could dispose of it in any way she saw fit by will, or if she died intestate, the law would take its course and the principal would be turned over to those who would have been entitled to it had it been part of her estate.

Viewing the problem, therefore, as one of intention of the settlor of the trust, we hold that all persons who now have any beneficial interest in the trust — the settlor, the life beneficiary with unlimited power of appointment by will, and the presumptive next of kin of the life beneficiary, constituting all of the parties necessary to any litigation in respect of the trust, have consented to its revocation and thus there has been a compliance with section 23 of the Personal Property Law.

In view of the foregoing determination, it is unnecessary to consider the application of the doctrine of " class representation " to the circumstances of this case and whether, and under what circumstances, Margaret Rose Buchwald, at this time the presumptive next of kin of the life beneficiary, as the representative of the class of possible future next of kin, might by her consent to the revocation of the trust bind future members of that class not now ascertainable (see *Moore* v. *Littel,* 41 N. Y. 66, 76; *Kent* v. *Church of St. Michael,* 136 N. Y. 10, 17; *Downey* v. *Seib,* 185 N. Y. 427, 432; 2 Restatement, Property, §§ 180, 181, 185; Civ. Prac. Act, § 1311; Ninth Annual Report of N. Y. Judicial Council, 1943, pp. 311–312; *Thatcher* v. *Empire Trust Co.,* 243 App. Div. 430; *County Trust Co.* v. *Young,* 287 N. Y. 801).

Judgment, without costs, is directed in favor of the plaintiffs declaring the trust herein revoked and directing defendant to reconvey the trust *res* to the plaintiff Oscar Glanckopf.

PECK, P. J., GLENNON, DORE and VAN VOORHIS, JJ., concur.

Judgment unanimously directed in favor of plaintiffs in accordance with opinion, without costs. Settle order on notice.