CITY BANK FARMERS TRUST COMPANY, as Trustee, Respondent, against ADO T. MILLER et al., Respondents, and CHESTER L. O'BRIEN et al., Appellants.

Argued April 19, 1938; decided May 24, 1938.

*Leslie Kirsch, Joseph Glass* and *Walter A. Lynch* for Chester L. O'Brien, appellant. The trust agreement gave rise to a reversion, not a remainder subject to a power of appointment. (*Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298; *Berlenbach* v. *Chemical Bank & Trust Co.*, 235 App. Div. 170; 260 N. Y. 539; *Doctor* v. *Hughes*, 225 N. Y. 305; *Davies* v. *City Bank Farmers Trust Co.*, 248 App. Div. 380; *Guaranty Trust Co.* v. *Harris*, 267 N. Y. 1; *Cruger* v. *Union Trust Co.*, 173 App. Div. 797; *Morsman* v. *Commissioner of Internal Revenue*, 90 Fed. Rep. [2d] 18; *Fidelity & Trust Co.* v. *Williams*, 268 Ky. 671; *Sequin State Bank & Trust Co.* v. *Locke*, 102 S. W. Rep. [2d] 1050.) The fund held by plaintiff is subject to appellant O'Brien's right of election. (*Newman* v. *Dore*, 275 N. Y.

371; *Matter of Byrnes*, 260 N. Y. 465; *Bodner* v. *Feit*, 247 App. Div. 119; *Rubin* v. *Myrub Realty Co.*, 244 App. Div. 541; *Matter of Ogsbury*, 7 App. Div. 71; *Matter of Sadowski*, 246 App. Div. 490; *Matter of Green*, 155 Misc. Rep. 641; 246 App. Div. 583; *Persky* v. *Bank of America Nat. Assn.*, 261 N. Y. 212.) If it be held that the trust agreement created a remainder subject to a power of appointment, the deceased's surviving spouse, father and mother are entitled to take the appointive fund as remaindermen, in default of exercise of the power of appointment. (*Guaranty Trust Co.* v. *Halsted*, 245 N. Y. 447; *Herzog* v. *Title Guarantee & Trust Co.*, 210 N. Y. 531.) Assuming that there was a remainder and not a reversion, the surviving spouse, father and mother are entitled to take the appointive fund on the ground that the anterior will was not intended to be an exercise of the posterior power. (*Chase Nat. Bank* v. *Chicago Title & Trust Co.*, 246 App. Div. 201; *United States Trust Co.* v. *Chauncey*, 32 Misc. Rep. 358; *Title Guarantee & Trust Co.* v. *Ebaugh*, 184 N. Y. Supp. 351; *Gassinger* v. *Thillman*, 160 Md. 194; *Close* v. *Farmers' Loan & Trust Co.*, 195 N. Y. 92; *Moffett* v. *Elmendorf*, 152 N. Y. 475.) If exercised at all, the power was exercised by the entire will, not the residuary clause. In that event, the appointive fund passed to the executor and merged with her general estate, subject to her surviving spouse's right of election and payment of all her debts and legacies. (*Lockwood* v. *Mildeberger*, 159 N. Y. 181; *Matter of Blackinton*, 153 Misc. Rep. 580; *Matter of Thompson*, 126 Misc. Rep. 99; 218 App. Div. 130; 245 N. Y. 565; *Dillon* v. *Spilo*, 275 N. Y. 275; *Schenck* v. *Barnes*, 156 N. Y. 316; *Cutting* v. *Cutting*, 86 N. Y. 522; *Mercantile Trust Co.* v. *Bergdorff & G. Co.*, 167 Md. 158; *Matter of Title G. & T. Co.*, 195 N. Y. 339.)

*Joseph P. Brennan, Jr.*, for Edwin D. Reynolds, appellant. The power of appointment, if exercised at all, was exercised by the entire will, not the residuary

clause. In that event the appointive fund passed to the executor and merged with the general estate of the deceased subject to the payment of all her debts and legacies. (*Fargo* v. *Squiers*, 154 N. Y. 250; *Farmers Loan & Trust Co.* v. *Kip*, 192 N. Y. 266; *Matter of Franklin Trust Co.*, 103 Misc. Rep. 143; *Matter of Blackinton*, 153 Misc. Rep. 580; *Low* v. *Bankers Trust Co.*, 270 N. Y. 143.)

*Edward M. Cameron, Jr.*, and *Isaac J. Quesenberry* for plaintiff, respondent. Upon the death of the settlor the *inter vivos* trust property passed pursuant to the terms of the trust agreement either to the appointees under her will or to the class of persons who constituted her distributees as though she had died intestate and domiciled in this State. The trust agreement created a remainder now subject to the settlor's power of appointment by will, and not a reversion. (*Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298; Cons. Laws, ch. 13, § 47; *Matter of Slade*, 154 Misc. Rep. 275; *Parsons* v. *Lyman*, 20 N. Y. 103; *Moultrie* v. *Hunt*, 23 N. Y. 394; *Doctor* v. *Hughes*, 225 N. Y. 305; *Hussey* v. *City Bank Farmers Trust Co.* 236 App. Div. 117; 261 N. Y. 533; *Kuntze* v. *Guaranty Trust Co.*, 242 App. Div. 7; 265 N. Y. 669; *Guaranty Trust Co.* v. *Harris*, 267 N. Y. 1; *Schoellkopf* v. *Marine Trust Co.*, 267 N. Y. 358.) The power of appointment under the *inter vivos* trust agreement was exercised by the residuary clause of the will. (*Howard* v. *Carusi*, MacArth. & M. [D. C.] 260; 109 U. S. 725; *United States Trust Co.* v. *Chauncey*, 32 Misc. Rep. 358; *Title Guaranty & Trust Co.* v. *Ebaugh*, 184 N. Y. Supp. 351; *Lockwood* v. *Mildeberger*, 159 N. Y. 181; *Low* v. *Bankers Trust Co.*, 270 N. Y. 143; *Matter of Pennsylvania Co.*, 264 Penn. St. 433; *Matter of Beaumont*, 147 Misc. Rep. 118; *Matter of Franklin Trust Co.*, 103 Misc. Rep. 143.) The power of appointment under the *inter vivos* trust agreement was not exercised in favor of the executor. (*Cutting* v. *Cutting*, 86 N. Y. 522; *Farmers'*

*Loan & Trust Co.* v. *Mortimer*, 219 N. Y. 290; *Crooke* v. *County of Kings*, 97 N. Y. 421; *Hirsch* v. *Bucki*, 162 App. Div. 659; *Matter of Beaumont*, 147 Misc. Rep. 118.) The *inter vivos* trust fund is not subject to right of election by appellant O'Brien. (*Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298; *Herrmann* v. *Jorgenson*, 263 N. Y. 348; *Matter of McCulloch*, 263 N. Y. 408; *Bodner* v. *Feit*, 247 App. Div. 119; *Rubin* v. *Myrub Realty Co.*, 244 App. Div. 541; *Newman* v. *Dore*, 275 N. Y. 371.)

*Samuel W. Tannenbaum* and *Harry A. Tifford* for Ado T. Miller, defendant-respondent. There was a valid exercise of the power of appointment by the will even though the power reserved in the trust agreement was created after the making of the will. (*Lockwood* v. *Mildeberger*, 159 N. Y. 181; *Low* v. *Bankers Trust Co.*, 270 N. Y. 143; *Hirsch* v. *Bucki*, 162 App. Div. 659; *United States Trust Co.* v. *Chauncey*, 32 Misc. Rep. 358; *Title Guaranty & Trust Co.* v. *Ebaugh*, 184 N. Y. Supp. 351; *Matter of Pennsylvania Co.*, 264 Penn. St. 433.) The settlor created a fund separate and apart from her estate. (*Van Cott* v. *Prentice*, 104 N. Y. 45.) The exercise of the power of appointment in favor of the testamentary trustee was valid. (49 C. J. 1267; *Farmers Loan & Trust Co.* v. *Kip*, 192 N. Y. 266; *Low* v. *Bankers Trust Co.*, 270 N. Y. 143; *Maynard* v. *Farmers Loan & Trust Co.*, 119 Misc. Rep. 503.) To hold that the power of appointment was exercised in favor of the executors under the will would destroy the evident intention of the deceased to make her mother and sisters her principal beneficiaries. (*Farmers Loan & Trust Co.* v. *Kip*, 192 N. Y. 266; *Low* v. *Bankers Trust Co.*, 270 N. Y. 143; *Bevan* v. *Cooper*, 72 N. Y. 317; *Matter of Beaumont*, 147 Misc. Rep. 118.) The settlor, by her trust agreement, made a complete disposition of all her interest in the trust fund and created a valid remainder in her appointee designated under the residuary clause of her will. (*Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298; *Beam* v.

*Central Hanover Bank & Trust Co.*, 248 App. Div. 182; *Schoellkopf* v. *Marine Trust Co.*, 267 N. Y. 358; *Guaranty Trust Co.* v. *Harris*, 267 N. Y. 1; *Nicoll* v. *New York & Erie R. R. Co.*, 12 N. Y. 121.)

*William Caverly* for W. Laurence Whittemore, defendant-respondent. The deceased was both the settlor and the beneficiary of the trust fund. It was, therefore, a transfer of personal property in trust for the use of the person making the transfer and, in so far as her creditors are concerned, it is absolutely void. (*Matter of Blackinton*, 153 Misc. Rep. 580; *Young* v. *Heermans*, 66 N. Y. 374; *Jackson* v. *Tallmadge*, 124 Misc. Rep. 389; 216 App. Div. 100; 246 N. Y. 133.)

*Gerald B. O'Neill* and *Robert C. Thomson, Jr.*, for William M. Chadbourne, as executor of Marilyn M. O'Brien, deceased, defendant-respondent.

FINCH, J. This is an appeal by defendants-appellants from a final judgment of the Supreme Court, based on an interlocutory judgment, for the construction of an *inter vivos* trust agreement. The appeal brings up for review the determination and order of the Appellate Division unanimously affirming said interlocutory judgment. Appellant O'Brien has excepted from his appeals so much of the interlocutory and final judgments as determined that he has duly elected to take the share of the estate of his deceased wife which, as her surviving spouse, he is entitled to receive pursuant to section 18 of the Decedent Estate Law (Cons. Laws, ch. 13).

Appellant Reynolds has excepted from his appeal so much of the interlocutory and final judgments as determined that the creditors of the settlor may invade the trust fund to the extent that the assets of the estate are insufficient to discharge their claims. In brief, the question involved is whether the remainder of the trust funds in the hands of the plaintiff, as trustee under an *inter vivos* trust which terminated upon the death of the settlor,

goes to her estate to be administered by her executor under her will or to her next of kin according to the laws of New York regarding intestacy, under the terms of the *inter vivos* trust, or to the testamentary trustee under the will, having regard to the rights of creditors in the last two contingencies.

The facts, in so far as necessary to present the questions, are, briefly, as follows: On April 23, 1931, Mrs. O'Brien, then unmarried and known as Marilyn Miller, executed a will. She then possessed an estate having a net worth of half a million dollars. When she died five years later her estate, exclusive of some $63,000 then held by plaintiff under the *inter vivos* trust, had $31,000 in assets against the claims of creditors of $34,000.

By her will, after directing that her debts and funeral expenses and testamentary charges be paid, she bequeathed to her two sisters and to her niece certain personal effects. To her father, the appellant Reynolds, she bequeathed $25,000. To Robert Montgomery and John Sweeney, her sisters' husbands, she bequeathed $1 each. To Carrie Carter, the mother of her deceased first husband, she bequeathed $15,000. To Woodlawn Cemetery she bequeathed $5,000 in trust to apply the income to improve and maintain her own mausoleum. All the rest, residue and remainder of her estate she bequeathed to the executors and trustees, therein named, in trust, to receive and collect the income, and to pay the same to her mother in the sum of $150 per week, and such additional sums from time to time " as my Executors and Trustees shall, in their uncontrolled discretion, consider necessary for her comfortable maintenance and support, so long as she shall live; such payments to be made out of the income of said trust fund, and out of the principal thereof to the extent, if any, that such income shall be insufficient for the purpose." Upon the death of the mother, any balance of income and the principal of the trust fund then remaining was given to the two sisters or to their issue if they be not living. At the time

of the making of the will and for the two preceding years Marilyn Miller had received as income for her services an annual sum of approximately $260,000.

On October 1, 1934, approximately three and one-half years after the execution of her will, Marilyn Miller married as her third husband Chester Leo O'Brien. For the next two years Mrs. O'Brien spent approximately $144,000 in living expenses for herself and her husband and gave to her husband in addition some $65,000. On July 26, 1935, apparently fearful of her own extravagance, Mrs. O'Brien, then a resident of the borough of Manhattan, city of New York, gave to plaintiff City Bank Farmers Trust Company, as trustee, some $82,000 with which to purchase approximately $78,000 of United States government securities under an *inter vivos* trust providing that the trustee should pay to the settlor the sum of $500 weekly so long as the net income and the principal shall provide funds for that purpose and leave over in the hands of the trustee the sum of at least $5,000. When the principal of the trust fund is reduced to $5,000 or less by reason of these payments, or for any other reason, the trust shall cease and the then principal shall be distributed to the settlor. On the death of Mrs. O'Brien the trustee is to dispose of any remaining principal as she shall by her last will and testament appoint, or, in default of such appointment, to the parties who would be her distributees under the laws of the State of New York. The trustee could only reinvest the principal in securities of the government of the United States. The trust agreement also contained provisions permitting additions to the trust. None was ever made. The original investment of $78,000 principal amount of United States Treasury notes was never changed, except such sales were made as were necessary to pay to Mrs. O'Brien the $500 weekly out of the principal. At the time of her death such payments had reduced the principal to the extent of more than $16,000. Appellant O'Brien, as the surviving

spouse of Mrs. O'Brien, duly elected to take the share of her estate which he was entitled to receive pursuant to section 18 of the Decedent Estate Law.

From the terms of the trust agreement alone it must be determined whether the settlor intended to reserve a reversion in herself or to make a gift in remainder to her distributees. (*Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298.) If it be determined that a proper construction of this instrument shows a reversion in the settlor and not a remainder to others, then we need consider no further the other proposed questions. It has already been noted that no one, at least until the exercise of the power of appointment, had any interest in the trust agreement except the settlor. Principal and income was to be paid in a weekly sum to the settlor. When the principal of the trust was reduced to $5,000 or below, the entire remainder was to be paid to the settlor. In default of the exercise of the power of appointment, what remained of principal and interest under the trust agreement was to go to the next of kin as provided by the laws relating to intestacy of the State where the settlor resided. Whether or not a power of appointment should be exercised, and, if so, for whose benefit it should be exercised, depended solely upon the will of the settlor. If the latter had determined to revoke this trust under section 23 of the Personal Property Law (Cons. Laws, ch. 41), no other consent would have been required than that of the settlor, because no one else had any interest as a beneficiary under the trust. The intent as expressed in the trust agreement was that the property was to be returned to the donor if she lived long enough. If not, then it should go to her legatees or next of kin. In either event it would go as her property. In case of intestacy, those who would take would take as next of kin and not by purchase. In such case no remainder was created but a reversion only. (*Doctor* v. *Hughes*, 225 N. Y. 305; *Berlenbach* v. *Chemical Bank & Trust Co.*, 235 App. Div. 170; affd., 260 N. Y. 539.)

Respondents urge that the foregoing cases relate to the revocability of a trust during the lifetime of a settlor, and contend that the death of the settlor affects the question of construction as to whether a reversion or a remainder was created. Whether construed during the lifetime or at the time of death has no effect on whether the trust agreement sets up a remainder or a reversion. During the lifetime of the settlor no one had any interest in the trust agreement except the settlor, and at the instant of her death, being a reversion, it would pass as part of her estate. The nature of the estate created by the trust deed is determined once and for all at the moment of the legal inception of the trust deed. Whether this deed is construed during the lifetime or after the death of the settlor, the nature of the estate created by the intent of the settlor, as measured by the language of the trust deed, remains the same. No valid distinction exists between the case at bar and the authorities cited.

It is further urged that because the settlor directed that any residue of principal existing at her death, in default of appointment by her last will and testament should pass according to the laws of intestacy of the State of New York, causes us to hold that a remainder and not a reversion has been created. At the time of the inception of this trust deed the settlor was a resident of the State of New York. Hence the provision respecting the disposition of the balance after the cessation of her life estate merely provided for the same disposition as would have occurred had she not used the words she did. In so doing she merely reserved in herself the balance of her estate after the life estate ceased. There was thus created no more than a reversion. (*Doctor* v. *Hughes, supra.*) The respondents rely on *Schoellkopf* v. *Marine Trust Co.* (267 N. Y. 358). That case, however, is not an authority for respondents. There the settlor directed that the income and principal be paid to such of his heirs under the laws of the State of New York as

would be living, not at the time of his death, but at the time of distribution, upon the expiration of the lives of the two grandchildren whose lives he employed to measure the duration of the trust. If these grandchildren had lived until the time of the expiration of the two lives which were employed to measure the trust, they would have taken under the definition of the word "heirs" as it was used in the Schoellkopf trust.

In the case at bar the settlor provided for distribution at her death according to the laws of her domicile, and did not intend to vary the ordinary line of intestate succession. (*Doctor* v. *Hughes* and *Whittemore* v. *Equitable Trust Co.*, *supra*.) The direction to the trustee to dispose of any remaining principal or income on the death of the settlor in one of two ways only, namely, in accordance with her will or the laws of intestacy, was merely a superficial expression of a duty imposed upon the trustee by law. The same disposition would have occurred had not those directions been contained in the trust agreement.

It follows that the trust agreement gave rise to a reversion and not a remainder subject to a power of appointment. The fund held by the plaintiff, therefore, passes to the executors of Mrs. O'Brien, subject to the right of election of her surviving spouse and the administration of the fund in accordance with her will.

The orders and judgments, in so far as appealed from, should be reversed and judgment directed in favor of the appellants in accordance with this opinion, without costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur.

Ordered accordingly.